Robert B. Jobe (Cal. State Bar #133089)
LAW OFFICE OF ROBERT B. JOBE
550 Kearny Street, Suite 200
San Francisco, CA 94108
(415) 956-5513 (phone)
(415) 840-0308 (fax)

Attorney for Petitioner,
Jose Guido.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSE GUIDO, ) <br> ) <br>     Petitioner, ) <br> ) <br>     v. ) <br> ) <br> LT. DAVID SEPULVEDA, JAIL ) <br> ADMINISTRATOR, SANTA CLARA ) <br> COUNTY DEPARTMENT OF ) <br> CORRECTION; ET AL., ) <br> ) <br>     Respondents. ) <br> _____ ) | No.   C 07-3873 MJJ <br><br> **PETITIONER'S TRAVERSE** |

**ARGUMENT**

I. **THE PLAIN LANGUAGE OF § 1226(c)(1) LIMITS MANDATORY DETENTION TO ALIENS WHO, AFTER OCTOBER 8, 1998, ARE "RELEASED" FROM CUSTODY FOR AN "OFFENSE" WHICH RENDERS THE ALIEN INADMISSIBLE OR DEPORTABLE, AND THE BIA ERRED IN FINDING TO THE CONTRARY**.

The language, structure, history and past interpretations of § 1226(c) lead to the inescapable conclusion that to be subject to mandatory detention, an alien must be released, after October 8, 1998, from incarceration for an "offense" for which he or she "is deportable." *Petitioner's Petition for Writ of Habeas Corpus* at 11-15. Unfortunately, however, § 1226(c) does not define the phrase "is deportable," and "[t]he implementing regulations also do little to help; they provide an alien with the opportunity to establish that he is 'not properly included' in the statute's reach, but they say nothing about what, precisely, the alien must show." *Tijani v.*

*Willis*, 430 F.3d 1241 1243 (9th Cir. 2005) (Tashima, J., concurring), *citing* 8 C.F.R. § 1003.19(h)(ii) (2005).  In *Matter of Joseph*, 22 I & N Dec. 799 (BIA 1999), the Board of Immigration Appeals ("the BIA" or "the Board") attempted to fill the statutory and regulatory gap, ruling that the government's allegation that an alien "is deportable" for reasons that would justify mandatory detention is entitled to great deference and ***"the Immigration Judge must have very substantial grounds to override [the government's] decision to charge the alien with a ground that subjects the alien to [mandatory] detention."*** 22 I & N Dec. at 800 (emphasis added).  According to the BIA, a lawful permanent resident can avoid mandatory detention "***only*** when an Immigration Judge is convinced that [the government] is ***substantially unlikely to establish*** . . . the charge or charges that subject the alien to mandatory detention." *Id.* (emphasis added).  In his petition for writ of habeas corpus, Mr. Guido challenges this aspect of *Joseph* on statutory and constitutional grounds.  In response, the government makes three points, none of which have any merit.

First, although the government recognizes that "the REAL ID Act allows habeas review . . . over challenges to detention that are independent of challenges to removal," it suggests that this Court lacks jurisdiction over Mr. Guido's statutory and constitutional challenges to his detention because "a decision in his favor [on those claims] would effectively be a ruling on [Mr. Guido's] removability" and, according to the government, the issue of Mr. Guido's removability must be litigated in the Court of Appeals pursuant to a petition for review of a final order of removal.  *Government's Return* at 3.  Notwithstanding the government's suggestion to the contrary, however, Mr. Guido has never asked this Court to determine whether his conviction for failing to maintain his registration under California Penal Code § 290(a)(1)(D) is, in fact, a crime involving moral turpitude that would render him deportable under 8 U.S.C. § 1227(a)(2)(A)(ii), as an alien who has been convicted of two crimes involving moral turpitude.  Rather, in his petition for writ of habeas corpus, Mr. Guido argued that the Board's interpretation of *the mandatory detention statute*, 8 U.S.C. § 1226(c), raises serious constitutional concerns and is, in fact, inconsistent with the provision's plain language.  Mr. Guido further argued that to avoid the

serious due-process concerns that stem from the Board's interpretation, and to give effect to the plain language of § 1226(c) which applies only in the case of an alien who "is deportable," the phrase "is deportable" in § 1226(c) must be construed as excluding lawful permanent residents who have ***substantial arguments*** that they are not, in fact, deportable because of a conviction that triggers mandatory detention.[1]  Obviously, Mr. Guido's dispute with the Board about the meaning of the mandatory detention statute, 8 U.S.C. § 1226(c), is entirely distinct from – and independent of – any challenge he may eventually raise to a future removal order.  *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2005).

Second, the government makes a half-hearted attempt to argue that its detention of Mr. Guido comports with the due process clause.  The government does not even attempt to grapple with the merits Judge Tashima's proffered interpretation of § 1226(c); rather it disparages Judge Tashima's view by referring to it as a "lone dissent." *Government's Return* at 4.  In doing so, the government errs.  Although the government characterizes Judge Tashima's opinion no fewer than four times as a "***dissent***," *Government's Return* at 4, the simple fact is that Judge Tashima's opinion is a ***concurrence***, which addresses an issue that the majority opinion – an opinion in which Judge Tashima joined – did not feel the need to address.  Moreover, Judge Tashima is not the "lone" advocate for such an interpretation.  Justice Breyer advocated a similar interpretation of the statute in *Demore v. Kim*, 538 U.S. 510, 578-79 (2003) (Breyer, J., concurring and dissenting)("[A]s long as Kim's legal arguments are neither insubstantial nor interposed solely for purposes of delay . . . then the immigration statutes, interpreted in light of the Constitution permit Kim (if neither dangerous nor a flight risk) to obtain bail.").[2]

---

[1] The Board itself has recognized that the meaning of the phrase "is deportable" may vary depending on context and has expressly held that the phrase may have a distinct meaning in the bond/detention context.  *See In re Kotliar,* 24 I & N Dec. 124, 126 (BIA 2007)*; In re Melo*, 21 I & N Dec. 883, 885 n.2 (BIA 1997); *cf.*, *In re Fortiz*, 21 I & N Dec. 1199, 1201 n.2 (BIA 1988).

[2] In *Demore*, the U.S. Supreme Court upheld the constitutionality of § 1226(c) as applied to an alien who ***conceded*** that he was deportable on grounds that subjected him to mandatory detention.  The *Demore* Court did not address the constitutional adequacy of the *Joseph* procedures as a device for screening out aliens not subject to mandatory detention under §

1    Third, the government suggests that Mr. Guido's "removal proceedings are moving at a
rapid clip" and that his detention is consistent with the Immigration and Nationality Act and the
Fifth Amendment's due process clause. The pace of Mr. Guido's removal proceedings, however,
is simply irrelevant to Mr. Guido's claim that § 1226(c) applies only to aliens who have been
released after October 8, 1998 and who have no substantial argument against deportability for
that offense. Moreover, the government simply ignores the Ninth Circuit's decision in
*Nadarajah v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006), where the Court considered the
general detention statutes governing removal of non-citizens, and in a detailed decision,
concluded that Congress has only authorized the government to detain immigrants for the brief
period of time reasonably necessary to complete removal proceedings – presumptively six
months. *Nadarajah*, 443 F.3d at 1078. The Ninth Circuit explained that Congress has not
authorized detention beyond this time where removal is not reasonably foreseeable, except under
specific statutes concerning national security-related detention that are not at issue here. Because
Mr. Guido already has been detained beyond that time, and because his removal is not
significantly likely to occur in the reasonably foreseeable future, no statute authorizes his
detention. *See id.* at 1078, 1080-81 ("[T]he general immigration detention statutes do not
authorize the Attorney General to incarcerate detainees for an indefinite period . . . After a
presumptively reasonable six-month detention, once the alien provides good reason to believe
that there is no significant likelihood of removal in the reasonably foreseeable future, the

---

1226(c) and, instead, repeatedly emphasized that Kim had "conceded that he was deportable because of a conviction that triggers § 1226(c) and thus [had] sought no *Joseph* hearing[.]" *Id.* at 514 n.3. *See also id.* at 522 (Kim did not "argue that he himself was not 'deportable' within the meaning of § 1226(c)."). "In conceding that he was deportable, [Kim] forwent a hearing at which he would have been entitled to raise any substantial argument available to demonstrate that he was not properly included in a mandatory detention category." *Id*. at 514. Thus, Kim "by his own choice did not receive one of the procedural protections otherwise provided to aliens detained under § 1226(c)." *Id*. at 523 n.6. Accordingly, the *Demore* Court had "no occasion to review the adequacy of *Joseph* hearings generally in screening out those who are improperly detained pursuant to § 1226(c)." *Id*. at 514 n.3.

Government must respond with evidence sufficient to rebut that showing.").[3]

## II. BECAUSE THE ATTORNEY GENERAL DID NOT TAKE HIM INTO CUSTODY UNTIL YEARS AFTER HIS ARREST AND RELEASE ON HIS MISDEMEANOR CHARGE UNDER CAL. PENAL CODE § 290(a)(1)(D), MR. GUIDO IS NOT SUBJECT TO MANDATORY DETENTION.

Relying, *inter alia*, on this Court's decision in *Rivera v. Demore*, No. C99-3042-THE, 1999 WL 521177, at *4 (N.D. Cal. July 13, 1999), Mr. Guido contends that "the plain meaning of this language ["when released"] is that it applies immediately after release from incarceration, not to aliens released many years[s] earlier." *Petition for Writ of Habeas Corpus*, 26-28. Although the Board has expressly ruled to the contrary in published – and therefore binding – cases, *In re Kotliar*, 24 I & N Dec. 124 (BIA 2007); *Matter of Rojas*, 23 I & N Dec. 117 (BIA 2001); *Matter of Noble*, 21 I & N Dec. 672 (BIA 1997), the government argues that it would not have been futile for Mr. Guido to have addressed his argument to the Board in the first instance.

---

[3] Strangely, the government argues that if he "should seek a stay of removal," Mr. Guido would be responsible for any time he spends in detention while challenging a final order of removal in the Ninth Circuit. This is nonsense. If the Ninth Circuit agrees that Mr. Guido's conviction for failing to register under California Penal Code § 290(a)(1)(D) is not a crime involving moral turpitude, Mr. Guido will be eligible for relief under former 8 U.S.C. § 1182(c)(1995) in conjunction with an application for adjustment of status under 8 U.S.C. § 1255. *In re Azurin*, 23 I & N Dec. 695 (BIA 2005); *see also* Exh. 8 to *Government's Return* (IJ's denial of adjustment of status premised on the conclusion that Mr. Guido's conviction under California Penal Code § 290(a)(1)(D) is a crime involving moral turpitude). Relief under former § 1182(c), however is limited to aliens who are maintaining "a lawful unrelinquished domicile" in the United States. Obviously, if Mr. Guido consents to be deported, he will be unable to establish that he has an "unreliquished domicile" in the United States and will be unable to benefit from any victory he may gain by challenging the Board's removal order in the Ninth Circuit. Moreover, the government's position is patently inconsistent with the Ninth Circuit's decision in *Tijani*, where, although the petitioner had obtained a stay of removal, the Court expressly accounted for "the foreseeable process in this court, where the government's brief in Tijani's appeal of the removal was only filed last month after two extensions of time, is a year or more." *Tijani*, 430 F.3d at 1242; *see also* 430 F.3d at 1248 n. 7 (Tashima, J., concurring).

Obviously, if Mr. Guido were to file a frivolous petition for review and somehow obtain a stay, he would bear responsibility for his continuing detention. Without a doubt, however, Mr. Guido has a very substantial argument that his conviction under California Penal Code § 290(a)(1)(D) for failing to maintain his registration is not a CIMT. *See In re Tobar-Lobo*, 24 I & N Dec. 143, 147-150 (BIA 2007)(Filppu, J., dissenting); Exhibit G to *Government's Return*.

1 This is incorrect for two reasons.

2 First, where the BIA has addressed an issue, the issue has been exhausted. *Sagermark v. INS*, 767 F.2d 645, 648 (9th Cir. 1985). In this case, the Board specifically ruled that Mr. Guido is subject to mandatory detention, and the Court should, therefore, conclude that Mr. Guido has exhausted his administrative remedies on that issue.

6 Second, because 28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing" habeas corpus petitions, any exhaustion requirement is prudential rather than statutory. *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001). In such circumstances, "where the agency's position on the question at issue 'appears already set,' and it is 'very likely' what the result of recourse to administrative remedies would be, such recourse would be futile and is not required." *El Rescate Legal Services v. Executive Office of Immigration Review*, 959 F.2d 742, (9th Cir 1992), *citing SAIF corp./Oregon Ship v. Johnson*, 908 F.2d 1434, 1441 (9th Cir 1990). Because an *en banc* 20-member panel of the Board has already rejected Mr. Guido's position, it is absolutely certain that Mr. Guido's position would have been rejected by the three member panel that entertained his bond appeal. Accordingly, the Court should reject the government's exhaustion argument and consider the merits of Mr. Guido's claim that the plain meaning of the phrase "when released" in § 1226(c) is that it applies immediately after release from incarceration, not to aliens released many year[s] earlier."

19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28

## **CONCLUSION**

For the foregoing reasons, the Court should declare that the BIA erred in concluding that Mr. Guido is subject to mandatory detention. Accordingly, the Court should issue a writ of habeas corpus directing Respondents to give Mr. Guido a bond hearing under 8 U.S.C. § 1226(c), or a *Joseph* hearing that comports with due process and the plain language of 8 U.S.C. § 1226(c).

Dated: October 15, 2007            Respectfully submitted,

LAW OFFICE OF ROBERT B. JOBE

/s/

_____
Robert B. Jobe
550 Kearny Street, Suite 200
San Francisco, CA 94108
(415) 956-5513 (phone)
(415) 840-0308 (fax)

Attorney for Petitioner